### CLARK v. THOMPSON — STONE v. THE SAME.

1. **Tax sale and deed:** SALES EN MASSE. Lands assessed to unknown owners in forties may be properly advertised and sold in quarter sections.

2. —— A tax deed conveying a quarter section *en masse*, and reciting an offer by the purchaser of the whole amount of taxes due thereon, shows a sale *en masse*, though there is a recital contained in the deed setting out each forty and the amount of taxes due on each.

3. —— RECITALS IN CERTIFICATE AND DEEDS. The record of sale will, as to the manner of sale, prevail as against recitals in the certificate of sale.

4. —— As to matters relating to the manner of sale, the tax deed is conclusive; and this rule of the statute prevails as well in chancery cases as in actions at law.

5. —— RECITALS IN MEMORANDUM. Hence the memorandum of the treasurer showing an adjournment of the sale cannot be received in evidence to contradict or render invalid the tax deed.

6. —— But if it were otherwise, a mistake in date of such memorandum, which is evident, and which is corrected and made certain by other parts of the memorandum, would not affect the validity of the sale.

### *Appeals from Grundy District Court.*

### MONDAY, DECEMBER 8.

THESE are actions in chancery to quiet plaintiffs' titles to certain different tracts of land, and to set aside tax sales and deeds, whereon defendant bases a claim of title thereto. The points

of law involved in each case and the facts are the same, and fully appear in the opinion. There was a decree in each case for plaintiff; the defendant appeals in each.

*Griffith & Knight* and *De Witt C. Cram* for the appellant.

*Boies, Allen & Couch,* and *Rush Clark* for the appellees.

BECK, Ch. J. — The facts and law of both cases being the same, they have been submitted together, and our decision may be properly announced in one opinion. And being chancery actions tried by the first method in the court below, they are retried in this court *de novo.* There are but two objections to defendant's tax titles made and relied upon by plaintiffs, namely : 1. The lands were sold in quantities not authorized by law; 2. The sale was at a time not appointed or permitted by law ; other objections are stated in plaintiffs' petitions but these are the only ones urged before us, in fact the others are expressly waived. We will proceed to their consideration.

1. TAX SALE AND DEED.

The land in controversy in the first case is S. W. ¼ sec. 6, Tp. 88 N., R. 16 W., in the second, the S. E. ¼ sec. 1, Tp. 88 N., R. 15 W. The tax deeds return that the lands, describing as above, were subject to taxation for the taxes of the years for which they were sold, and that the taxes assessed thereon remaining due and unpaid, they were, at adjourned sales, sold in conformity with the requirements of the law. The deed in the second case then continues in the following language : " And, whereas, at the time and place aforesaid, W. D. Thompson, etc., having offered to pay the sum of eight dollars and twenty-six cents, being the whole amount of taxes, interest and costs then due and remaining unpaid on said property for the year, etc., for the whole of the above-described property, to wit: For the N. E. ¼, S. E. ¼ 1–88–15, the sum of $208 ; for the N. W. ¼, S. E. ¼ 1–88–15, the sum of $209 ; for S. W. ¼, S. E. ¼ 1–88–15 the sum of $208 ; for the S. E. ¼, S. E. ¼ the sum of $209, which was the least quantity bid for; and the payment of the said sum having been by him made to said treasurer,

the property was stricken off to him at that price," etc. The first deed is identical with the foregoing, except as to the amount of the bid and the description of the "forties" constituting the quarter section. It appears by the assessors' book and tax list, that each tract of land was assessed and listed to unknown owners in forty-acre, or one-sixteenth of a section, subdivisions. The certificate of sale of the land involved in the second case shows that another tract was sold to defendant at the same sale, and the transaction is set out as though the two tracts were sold together. The same is true of the certificate of sale in the first case as to one sale, there having been more than one sale upon the delinquent taxes of other years. The sales were made in 1863, upon adjournments of sale advertised to take place in November, 1862. In the first case there had been advertisements of the sale in 1860 and 1861, and adjournments thereunder, but there was also an advertisement of the sale in 1862, to take place in November. This was also adjourned to the day upon which the sale took place. We will be required to consider these adjournments hereafter. These advertisements of 1862 describe the land in each case as one tract, designating each as a quarter section.

I. The lands, though assessed to unknown owners, in "forties," were properly advertised in quarter sections, and having been so advertised were properly subject to sale by such description. Chapter 25, acts extra session 8th Gen. Ass.; *Henderson* v. *Oliver*, 32 Iowa, 512. Does the deed show that the lands were so sold? We are of the opinion that it does. It recites that an offer of the whole amount of taxes due, being a certain specified sum, was made for the whole tract of 160 acres, which was struck off to the purchaser thereon. The recitals in regard to the fractions of the tract, and the sum bid, do not change the obvious meaning that the whole quarter section was sold in one sale, upon one bid, and for the price named. We know of no reason or rule of law requiring us to interpret tax deeds or other writings issued in tax sales, differently from other instruments which witness the transactions of men. Certainly it would

not be seriously contended in any other than a tax title case, that the transaction, as rehearsed in the deed, was not a sale of a quarter section *en masse*. If such language were found in a sheriff's deed, or in the return of an execution, or in a writing witnessing a contract or transaction between parties, it would not be claimed that the offer or bid of the purchaser was for less than the whole tract, and that thereby he did not become bound to take it all, and pay the whole amount of his offer. Whatever may have been intended to be expressed by the words of the deed, setting out the fractions of the land and prices, they certainly do not convey the thought that the sale was in parcels. The point demands no further attention.

II. But it is claimed that the certificates of sale show that the lands were sold *en masse*, with other tracts, and, therefore, the sale and deeds are void. The record of the 3.—— recitals in certificate and deed. sale in the first case shows the fact to be otherwise, and must prevail against the certificate. *Henderson* v. *Oliver*, 32 Iowa, 512. But the deeds in both cases contradict the certificates ; they state that the lands were sold in quarter section tracts, and do not show a sale *en masse* with other lands. As to this fact which relates to the manner of the sale, the deeds are conclusive. Rev., § 784. The principles upon which the construction of this statute leading to this rule is sustained, have been too often discussed, and are too well settled to be re-stated here. See *McCready* v. *Sexton*, 29 Iowa, 356 ; *Rima* v. *Cowan*, 31 id. 125 ; *Bulkley* v. *Callanan*, 32 id. 461.

III. It is argued by one of the counsel for the appellees that the rule just stated, requiring the deeds to be taken as conclusive evidence, does not prevail in equity ; that it is competent to show in that forum the rehearsals of the deeds to be in conflict with the facts; that when the object of the action in chancery is as in these cases, to set aside the deeds, or redeem from the sales, for non-compliance with the law, the deeds may be thus assailed, while they would be conclusive in an action at law.

It cannot be doubted that the legislature may prescribe rules of evidence for equity as well as for law courts, and give to instruments of the character of tax deeds, validity in any proceedings wherein they may be used as evidence. The broad and explicit language of Revision, section 784, is the most conclusive answer to the position of counsel that can be given. It provides that in all " controversies and suits in relation to the rights of purchasers " of lands sold for taxes, the deed shall have the effect given it by this court in numerous cases, viz. : shall be conclusive evidence as to all matters relating to the manner of the sale. Are these cases, " suits or controversies" in relation to the rights of purchasers at tax sales? No one can answer negatively. The expression is so comprehensive that it will include every proceeding, every " controversy " in regard to the rights of the purchaser, wherein evidence may be required or offered. As to the import of the word "controversy" see *Home Ins. Co.* v. *N. W. Packet Co.*, 32 Iowa, 223. It is not within the jurisdiction of equity to set aside statutes, and we have never heard that it has power to relieve, in any way, the severities of express legislative enactments. The position of counsel, to our minds, requires no further discussion.

IV. The sale of the lands in question was adjourned from time to time under the provisions of Revision, section 773. The
<span style="margin-left:2em">4. — recitals in</span> treasurer kept a record of these adjournments,
<span style="margin-left:2em">memorandum.</span> which was introduced in evidence. It shows an adjournment from the 3d day of December, 1862, to the 8th day of December, 1864, and an adjournment from the 8th day of December, 1862, to a subsequent day, December 23, 1862, and then regular adjournments to the day of sale. It is insisted that it is thus shown that the sale was had at a time not authorized by law, as there was not such a regular series of adjournments as is authorized by law; that no sale was had which was adjourned to December 8, 1862, and the adjournment on that day and those subsequently made were illegal. While it is admitted that the date 1864, given, probably resulted from a clerical mistake, yet it is claimed that the record must stand and will vitiate the pro-

ceedings. The answer to this position is complete, and is based upon two considerations. 1st. The written memorandum of the adjournments of the sale kept by the treasurer is not authorized or required by the law, and as a mere memorandum of the treasurer, though in that character it may be admissible in evidence, it is clearly incompetent to overthrow the presumption of regularity raised by the deed. The notices of adjournment required by the law to be given were not in evidence. 2d. As the adjournments pertained to the *time* of the sale, which is not a jurisdictional matter, the deed is conclusive evidence of compliance with the law in that respect, and it cannot be defeated by other evidence contradicting such presumption. See *McCready* v. *Sexton*, 29 Iowa, 356, and cases following it.

That the date, 1864, occurring in the treasurer's memorandum, is a mistake is quite apparent upon the face of the paper itself. Its correction is made quite certain without going outside of the memorandum. By regarding the date intended as 1862, all parts of the memorandum are harmonious and consistent; that date corresponding with both prior and subsequent entries. Whatever weight may be given to the memorandum if in evidence, it cannot be regarded as showing an adjournment of the sale from December 3, 1862, to December 8, 1864.

We have noticed as fully as their character and nature demand all the points raised by counsel. It is our opinion that plaintiffs are not entitled to the relief granted them by the district court. The decree in each case is reversed and a decree will be entered in each in this court dismissing the petitions of plaintiffs.

Reversed.